UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE POINTE ON WESTSHORE, LLC,

    Plaintiff,

v.                                            Case No: 8:22-cv-2478-KKM-SPF

CERTAIN UNDERWRITERS OF LLOYD'S
LONDON SUBSCRIBING TO POLICY
NUMBER AMR-65342, INDIAN HARBOR
INSURANCE CO., LEXINGTON INSURANCE
CO., QBE SPECIALTY INSURANCE CO.,
STEADFAST INSURANCE CO., UNITED
SPECIALTY INSURANCE CO., GENERAL
SECURITY INDEMNITY CO. OF ARIZONA,
HDI GLOBAL SPECIALTY SE, OLD
REPUBLIC UNION INSURANCE CO., and
SAFETY SPECIALITY INSURANCE CO.,

    Defendants.
_____

# ORDER

The Pointe on Westshore, LLC, sued the Defendants in state court. Compl. (Doc. 1-2). The Defendants removed this action, (Doc. 1), and move to compel arbitration. *See* Mot. to Compel Arbitration (Doc. 10). Because the parties agreed to arbitrate "all matters" in relation to their insurance contract, this case referred to arbitration under 9 U.S.C. § 206.

I. BACKGROUND

A. The Loss and Insurance Policy

The Pointe on Westshore, LLC, owns a partially occupied apartment complex in Tampa, Florida. Compl. ¶ 2. In 2018, the Pointe began a construction project that would transform the complex into six, five-story buildings. *Id.* ¶ 13. As part of this venture, the Pointe purchased a builders' risk insurance policy from the Defendants. *Id.* ¶ 14.

On June 29, 2021, a severe lighting storm derailed the construction project. *Id.* ¶ 17. The storm caused "significant delays" by damaging electrical systems, elevators, and appliances. *Id.* ¶¶ 18–19. Further, due to the resulting loss, the Pointe was forced to reallocate construction materials and manpower. *Id.* ¶¶ 19–20. These losses were reported to the Defendants, and the Pointe acknowledges that "coverage was issued." *Id.* ¶ 21. But the Pointe alleges that the Defendants failed to pay the entire amount due under the insurance policy. *Id.* ¶ 22 To obtain full coverage, the Pointe sued the Defendants in Florida court. *See id.*

B. The Arbitration Clause & the Service-of-Suit Amendments

Although the Pointe sued in Florida court, the insurance policy includes an arbitration clause requiring that "[a]ll matters" "in relation to" the insurance policy "shall be referred" to arbitration:

2

> All matters in difference between the Insured and the Companies (hereinafter referred to as 'the parties') in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.
>
> . . .
>
> Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.
>
> . . .
>
> The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

Ins. Pol'y (Doc. 1-1) at 50.

The Pointe alleges that the parties "expressly amended" the arbitration clause by adding service-of-suit clauses. Compl. ¶¶ 28–35. The service-of-suit amendment applicable to most of the Defendants provides:

> [I]n the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

3

Ins. Pol'y at 101. Underwriters and Steadfast also agreed to materially similar amendments. *Id.* at 77, 94. But Indian Harbor and QBE agreed to amendments that merely provide, "When a cause of action arises in any of the states listed below, service of process applies as shown below for that state." *Id.* at 78, 88.

* * *

The Pointe sued the Defendants in Florida court for breach-of-contract damages. *See* Compl. The Pointe also sought a declaratory judgment that the service-of-suit amendments nullified the arbitration clause and requested an injunction prohibiting the Defendants from—per the terms of the arbitration clause—appointing an arbitrator on behalf of the Pointe. *Id.* ¶¶ 24–40, 49–54. The Defendants removed this action under 9 U.S.C. § 205, (Doc. 1), and collectively move to compel arbitration under 9 U.S.C. § 206 and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517 (the "Convention"). *See* Mot. to Compel Arbitration.

## II.   LEGAL STANDARD

Congress incorporated the Convention on the Recognition and Enforcement of Foreign Arbitral Awards into the Federal Arbitration Act. *See* 9 U.S.C. §§ 201–208. The FAA grants federal courts "original jurisdiction over actions 'falling under the Convention.'" *Czarina v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290 (11th Cir. 2004)

4

(quoting 9 U.S.C. § 203). Also, § 206 provides litigants with "an action to compel arbitration pursuant to an arbitration agreement falling under the Convention." *Id.* at 1290–91 (citing 9 U.S.C. § 206).

To determine "whether an award falls under the Convention, and thus, whether the district court has jurisdiction over the action to compel arbitration or to confirm an award, courts look to the language of the Convention." *Czarina*, 358 F.3d at 1291. Relevant here, Article II(3) of the Convention states:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention, art. II(3). "[A]n arbitration agreement is null and void under Article II(3) of the Convention only where it is obtained through those limited situations, such as fraud, mistake, duress, and waiver, constituting standard breach-of-contract defenses that can be applied neutrally on an international scale." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011) (quotation omitted).

There are two kinds of arbitrability questions under the FAA: (1) questions about "whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement" and (2) questions about "who" "should decide arbitrability."

5

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995).[1] In cases involving the first kind of question, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Comparatively, in disputes about "who" decides whether an issue is arbitrable, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (quotation omitted).

## III.  ANALYSIS

The Defendants move to compel arbitration for two reasons. First, they argue that the arbitration clause delegates all threshold questions of arbitrability to the arbitrator. *See* Defs.' Reply (Doc. 20) at 3–6. Second, they argue that the arbitration clause requires the Court to compel arbitration. *Id.* at 6–8. Although the Defendants' first argument fails, their second argument succeeds.

---

[1] *First Options* is controlling precedent even though it dealt with Chapter 1 of the FAA. 514 U.S. at 940. The FAA clarifies that Chapter 1 of the Act "applies to actions and proceedings brought under" Chapter 2 "to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208. Accordingly, the Court cites decisions about Chapter 1 cases so long as they do not conflict with Chapter 2 or the Convention.

### A. The Arbitration Clause Does Not Include a Delegation Provision

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). These agreements are commonly called "delegation" provisions. *See, e.g., Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). Yet "[c]ourts should not assume that the parties agreed to" a delegation provision "unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (quotation omitted).

The Defendants argue that this Court must compel arbitration because the Parties agreed to a delegation provision. Defs.' Reply (Doc. 20) at 3–6. As a result, the Defendants claim that the Court should not address whether the service-of-suit amendments repealed the arbitration clause because questions about the arbitration clause's scope and enforceability are committed to the arbitration panel. *Id.* at 2. The arbitration clause provides, in relevant part:

> All matters in difference between the Insured and the Companies . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Ins. Pol'y (Doc. 1-1) at 50.

The Defendants rely on *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1147–48 (11th Cir. 2015), as an example of a sufficient delegation provision, but the analogy to the arbitration provision at issue here is inapt. The arbitration clause in *Parnell* committed "all 'Disputes' to arbitration and expressly state[d] that a Dispute includes '*any issue concerning the validity, enforceability, or scope of* this loan or *the Arbitration agreement.*' " *Id.* at 1148 (emphasis altered). *Parnell* held that this clause included a delegation provision because it committed "all Disputes" to "arbitration, with Disputes construed broadly," and "specifically define[d] Disputes to include *at least* 'issue[s] concerning the validity, enforceability, or *scope of* this loan or *the Arbitration agreement.*' " *Id.* (emphasis altered). In *Parnell*, the court identified "clear and unmistakable evidence" that the parties agreed to a delegation provision because that arbitration clause expressly committed all disputes about the "scope" of the "Arbitration agreement" to the arbitrator. *See First Options*, 514 U.S. at 944; *Parnell*, 804 F.3d at 1148.

Comparatively, the arbitration clause at issue here does not include this clear and unmistakable language. The arbitration clause commits "[a]ll matters in difference . . . in relation to *this insurance*, including its formation and validity" to arbitration. Ins. Pol'y (Doc. 1-1) at 50 (emphasis added). Unlike *Parnell*, there is no clear or unmistakable reference to disputes about the scope of the arbitration clause, i.e., to the threshold

8

arbitrability question. One might argue that disputes about the arbitration clause are subsumed under "[a]ll matters in difference . . . in relation to this insurance" because the arbitration clause is part of the insurance contract. *Id.* But this is hardly "clear and unmistakable evidence." *First Options*, 514 U.S. at 944. The term "this insurance" could refer to the substance of insurance alone, not the arbitration clause. *Compare Parnell*, 804 F.3d at 1148 (holding that the arbitration clause included a delegation provision when it committed all disputes about "this loan *or* the Arbitration agreement" to arbitration).

Furthermore, the clause at issue in *Parnell* clearly said that issues concerning "the validity, enforceability, or *scope of* . . . the Arbitration agreement" are committed to arbitration. *Id.* That "scope of" the arbitration agreement provision is missing here. *See* Ins. Pol'y (Doc. 1-1) at 50. Instead, the arbitration provision references only the "formation and the validity" of the insurance agreement. *Id.*

Because the arbitration clause does not contain "clear and unmistakable evidence" that the parties agreed to a delegation provision, this Court refuses to "assume" that the Parties did so. *First Options*, 514 U.S. at 944. Accordingly, this Court must determine whether the Parties' dispute is arbitrable.

## B. The Convention Requires Arbitration

### 1. The *Bautista* Framework

"In deciding a motion to compel arbitration under the Convention Act, a court conducts a very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quotation omitted). "A district court must order arbitration unless (1) the four jurisdictional prerequisites are not met," or "(2) one of the Convention's affirmative defenses applies." *Id.* at 1294–95. The four prerequisites are: (1) "an agreement in writing within the meaning of the Convention;" (2) "the agreement provides for arbitration in the territory of a signatory of the Convention;" (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial;" and (4) "a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 1294 n.7. The Convention's affirmative defenses "encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Id.* at 1302.

The Pointe does not raise any affirmative defenses or contest the second, third, or fourth jurisdictional prerequisites of *Bautista*.[2] Nor does the Pointe contest that the

---

[2] Regarding the second prerequisite, the clause provides for arbitration in New York. *See* Ins. Pol'y at 50; *Bautista*, 396 F.3d at 1294 n.7. Regarding the third prerequisite, the arbitration clause arises from a "commercial" legal relationship. *Id.* Finally, several Parties to the insurance policy are not American citizens. *Id.* HDI Global is registered and operating in Germany, and Underwriters are partially comprised of unincorporated associations registered and operating in England. (Doc. 1) at 5–6.

arbitration clause applies to this dispute, if enforceable. Instead, the Pointe argues that the Defendants fail *Bautista*'s first jurisdictional prerequisite because the service-of-suit amendments repealed the arbitration clause. *See* Pl.'s Resp. to Mot. to Compel Arbitration (Doc. 16). Thus, that is the only remaining question.

### 2. The Service-Of-Suit Amendments Did Not Repeal the Arbitration Clause

The Pointe argues that the arbitration clause was repealed by the service-of-suit amendments. *See* Pl.'s Resp. to Mot. to Compel Arbitration. The service-of-suit amendment applicable to most of the Defendants provides:

> [I]n the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.

Ins. Pol'y at 101. Underwriters and Steadfast also agreed to materially similar amendments. *Id.* at 77, 94. Indian Harbor and QBE agreed to amendments that merely provided, "When a cause of action arises in any of the states listed below, service of process applies as shown below for that state." *Id.* at 78, 88.

These service-of-suit amendments did not repeal the arbitration clause for four reasons. *First,* the service-of-suit amendments can be read harmoniously with the arbitration clause so any interpretation of the contract rendering one of the provisions

inoperative would be disfavored as a matter of Florida law. "When a contract contains apparently conflicting clauses, [courts] must interpret it in a manner that would reconcile the conflicting clauses, if possible." *Lloyds Underwriters v. Netterstrom*, 17 So. 3d 732, 735 (Fla. 1st DCA 2009); *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (articulating the same principle). The Pointe argues that the service-of-suit amendments would be superfluous if this Court enforces the arbitration clause. Pl.'s Resp. to Mot. to Compel Arbitration at 9. But "service-of-suit clauses do not negate accompanying arbitration clauses;" instead, "they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 554 (3d Cir. 2009). The arbitration clause vests the arbitration panel with the authority to determine the merits question of *what* amount is due under the insurance policy. Ins. Pol'y at 50. But the arbitration panel's decision is meaningless unless a court—with personal jurisdiction over the parties—can *enforce* the arbitrators' decision. Therefore, service-of-suit clauses complement arbitration clauses by ensuring that future arbitration awards are enforceable. *See Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295, 298 (2d Cir. 1996); *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1205–06 & n.10 (5th Cir. 1991) ("Consent to personal jurisdiction is of value especially with respect to defendants that are incorporated and have their principal place of business

12

abroad."). This Court, several circuits, many other federal district courts, and Florida courts have previously rejected the Pointe's reasoning on this basis. *See e.g.*, *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971) ("The assent of the insurer to jurisdiction does not prevent it from raising [an arbitration] defense based on policy terms."); *Montauk Oil*, 79 F.3d at 298 (2d Cir. 1996); *Century Indem. Co.*, 584 F.3d at 554 (3d Cir. 2009); *JHS Cap. Advisors, LLC v. Westchester Surplus Lines Ins. Co.*, No. 8:12-cv-2006, 2013 WL 616946, at *2 (M.D. Fla. Feb. 19, 2013) (Merryday, J.); *Physicians Grp., LLC v. Certain Underwriters at Lloyd's London Subscribing to Pol'y No. 458898*, No. 8:13-cv-1824, 2013 WL 12170607, at *2 (M.D. Fla. Aug. 8, 2013) (Moody, J.).[3]

*Second*, the Pointe's reading is inconsistent with the common understanding of service-of-suit clauses. Courts must construe a term or provision in an insurance policy according to its "ordinary meaning." *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111,

---

[3] *Accord Holiday Isle Owners Ass'n v. Certain Underwriters at Lloyd's London*, No. 21-cv-512, 2022 WL 2161511, at *10 (S.D. Ala. June 15, 2022) (Beaverstock, J.); *Montana Ass'n of Ctys. Prop. & Cas. Tr. v. Certain Underwriters at Lloyds*, No. 19-cv-196, 2020 WL 6202673, at *3–4 (D. Mont. Oct. 22, 2020) (Christensen, J.); *Gold Coast Prop. Mgmt. Inc. v. Certain Underwriters at Lloyd's London*, No. 18-cv-23693, 2019 WL 2482058, at *5 (S.D. Fla. June 14, 2019) (Gayles, J.); *New Jersey Physicians United Reciprocal Exch. v. Ace Underwriting Agencies Ltd.*, No. 12-cv-4397, 2013 WL 1558716, at *5–8 (D.N.J. Apr. 11, 2013) (Wolfson, J.); *Sec. Life Ins. Co. v. Hannover Life Reassurance Co. of Am.*, 167 F. Supp. 2d 1086, 1088 (D. Minn. Mar. 28, 2001) (Montgomery, J.); *Nat'l Bankers Risk Ins. Co. v. John Hancock Ins. Co.*, No. 01-cv-238, 2001 WL 1671447, at *2 (N.D. Okla. Oct. 24, 2001) (Brett, J.); *Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's London Subscribing to Ins. Evidenced by Pol'y No. 757/CJ940589*, No. 96-cv-1627, 1996 WL 495157, at *2 (E.D. La. Aug. 30, 1996) (Clement, J.); *NECA Ins. Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 595 F. Supp. 955, 958 (S.D.N.Y. Oct. 16, 1984) (Sweet, J.); *Netterstrom*, 17 So. 3d at 735 (Fla. 1st DCA 2009); *Old Dominion Ins. Co. v. Dependable Reinsurance Co.*, 472 So. 2d 1365, 1368 (Fla. 1st DCA 1985).

1113 (Fla. 2017). As demonstrated through the numerous cases cited above, service-of-suit amendments are not ordinarily understood to repeal arbitration clauses. And when the Parties in this case executed the service-of-suit amendments, they did so against the backdrop of many decisions holding that service-of-suit clauses do not repeal arbitration clauses. Comparatively, this Court is aware of, and the Pointe identifies, no decision holding that, as a matter of Florida contract law or federal law, a service-of-suit clause repeals an arbitration clause agreed to by parties in privity. Furthermore, the Pointe does not explain why the amendments at issue here are unlike most service-of-suit clauses. As the Pointe concedes, none of the service of suit-of-suit amendments mention the arbitration clause. Pl.'s Resp. to Mot. to Compel Arbitration at 12. Because both can operate coextensively (and indeed have been interpreted to do so), it is difficult to see how the service-of-suit amendments repealed the arbitration clause. *Cf. Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("[R]epeals [of statutes] by implication are 'disfavored'"); *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1035 (Fla. 2001) ("[I]mplied repeals [of statutes] are not favored and will not be upheld in doubtful cases.").

*Third*, the general-specific canon requires this Court to enforce the arbitration clause. When a contract includes two provisions that seemingly conflict, the "specific provision dealing with a particular subject will control over" the other "provision dealing only generally with that same subject." *Kel Homes, LLC v. Burris*, 933 So. 2d 699, 703

14

(Fla. 2d DCA 2006); *Shoma Coral Gables, LLC v. Gables Inv. Holdings, LLC*, 307 So. 3d 153, 161 (Fla. 3d DCA 2020) (same). The arbitration clause specifically requires arbitration. Ins. Pol'y at 50. Comparatively, the service-of-suit amendments say nothing about arbitration; instead, they speak more generally about the Defendants' obligation to submit to the jurisdiction of American courts. *Id.* at 77–78, 88, 94, 101.

*Fourth*, the service-of-suit amendments do not prescribe *who* determines "any amount . . . due" under the contract; it provides only that the Insurers "will submit to the jurisdiction of a Court of competent jurisdiction within the United States" "in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder." *See, e.g., id.* at 101. The Pointe argues that the phrase "any amount claimed to be due hereunder" is broad and incompatible with the arbitration clause. Pl.'s Resp. to Mot. to Compel Arbitration at 8. But this phrase has not dissuaded federal courts and Florida courts in other cases.[4] The reason is simple: Even if the service-of-suit amendments grant courts the jurisdiction to enforce the amount due under the contract, that does not necessarily mean that the court has jurisdiction to resolve the merits dispute about what

---

[4] *Century Indem. Co.*, 584 F.3d at 554 (3d Cir. 2009); *Physicians Grp.*, 2013 WL 12170607, at *2 (M.D. Fla. Aug. 8, 2013) (Moody, J.); *Holiday Isle Owners Ass'n*, 2022 WL 2161511, at *10 (S.D. Ala. June 15, 2022) (Beaverstock, J.); *Gold Coast Prop. Mgmt. Inc.*, 2019 WL 2482058, at *5 (S.D. Fla. June 14, 2019) (Gayles, J.); *New Jersey Physicians*, 2013 WL 1558716, at *5–8 (D.N.J. Apr. 11, 2013) (Wolfson, J.); *Sec. Life Ins. Co.*, 167 F. Supp. 2d at 1088 (D. Minn. 2001) (Montgomery, J.); *Nat'l Bankers Risk Ins.*, 2001 WL 1671447, at *2 (N.D. Okla. Oct. 24, 2001) (Brett, J.); *Ochsner/Sisters of Charity Health Plan, Inc.*, 1996 WL 495157, at *2 (E.D. La. Aug. 30, 1996) (Clement, J.); *NECA*, 595 F. Supp. at 958 (S.D.N.Y. 1984) (Sweet, J.); *Netterstrom*, 17 So. 3d at 735 (Fla. 1st DCA 2009).

amount is due. The dispute about *what* amount is due is referred to arbitration, the power to *enforce* the amount due is granted to the court. And the phrase "any amount claimed to be due hereunder" incorporates the entire insurance contract, including the arbitration clause, which prescribes how merits questions about *what* amount is due are resolved.

The Pointe identifies seemingly contrary decisions, but they are distinguishable from this case. The Pointe cites *Transit Casualty Co. in Receivership v. Certain Underwriters at Lloyd's of London*, which held that a service-of-suit amendment repealed an arbitration clause. 963 S.W.2d 392, 403 (Mo. Ct. App. 1998). But neither the Federal Arbitration Act nor Florida contract law were at issue in *Transit Casualty*, *id.* at 394, and *Transit Casualty* is frequently rejected or distinguished by federal courts. *See, e.g., New Jersey Physicians*, 2013 WL 1558716, at *7 (D.N.J. Apr. 11, 2013) (Wolfson, J.) (holding that *Transit Casualty* is "neither persuasive nor precedential"); *Montana Ass'n of Ctys. Prop. & Cas. Tr.*, 2020 WL 6202673, at *6 (D. Mont. Oct. 22, 2020) (Christensen, J.); *Nat'l Bankers Risk Ins.*, 2001 WL 1671447, at *2 (N.D. Okla. Oct. 24, 2001) (Brett, J.).

Additionally, *Thiokol Corp. v. Certain Underwriters at Lloyd's, London*—the one federal decision holding that a service-of-suit clause curtailed an arbitration clause—is distinguishable. *See* No. 1:96-cv-28, 1997 WL 33798359 (D. Utah May 6, 1997) (Benson, J.). In *Thiokol*, the court held that a third-party beneficiary of an insurance agreement was not bound by the arbitration clause contained in the underlying insurance policy. *See id.* at

16

*1, *5, & n.3. The Court explained that the service-of-suit clause applied only to the third-party beneficiary and only granted the third-party beneficiary, not the parties in privity, the ability to ignore the arbitration clause. *Id.* at *5, & n.3. Furthermore, *Thiokol* distinguished itself from other precedents on that basis. *Id.* at *5 n.3 (acknowledging "[t]his case is unique"). Unlike *Thiokol*, this dispute involves parties in privity, not third-party beneficiaries. *See Montana Ass'n of Ctys. Prop. & Cas. Tr.*, 2020 WL 6202673, at *5 (D. Mont. Oct. 22, 2020) (Christensen, J.) (distinguishing *Thiokol* for the same reason). Because *Thiokol* is inapplicable to this dispute, this Court need not opine on whether *Thiokol* was correctly decided.

### C. Plaintiff's Request for Preliminary Injunctive Relief Is Not Before the Court

The arbitration clause provides:

> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Ins. Pol'y at 50. Under this arbitration provision, the Defendants may appoint an arbitrator on behalf of the Pointe. Mot. to Compel Arbitration at 21. The Pointe, however, sues for

17

a preliminary injunction prohibiting the Defendants from appointing the Pointe's arbitrator. Compl. ¶¶ 49–54.

Of note, the Pointe requested a preliminary injunction only in Count III of its complaint, *see id.*, and never submitted a separate motion for a preliminary injunction. Instead, the Pointe references Count III only in its response to the Defendants' motion to compel arbitration. *See* Pl.'s Resp. to Mot. to Compel Arbitration at 15 ("Plaintiff seeks this Court to void Defendants actions which should not have been taken unless and until the Court found the Arbitration Provision to apply to this dispute."). Under the Rules of Civil Procedure and this Court's Local Rules, the Pointe must submit a motion to obtain a preliminary injunction. *See* FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by motion."); *Id.* 65(a)(2) (contemplating that the Plaintiff submitted a motion for a preliminary injunction); Local Rule 6.01–02 (requiring a plaintiff to request a preliminary injunction through a motion with an attached legal memorandum). Because the Pointe never moved for a preliminary injunction, its request for preliminary injunctive relief is not before the Court.

Additionally, even if the Pointe submitted such a motion now, this Court would deny it because the Pointe is unlikely to succeed on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits."). In its response to the Defendant's

18

motion to compel, the Pointe argues that "it has been put in an impossible position: either (a) appoint an arbitrator, thus acknowledging the validity of the Arbitration Provision, which Plaintiff cannot do, or (b) fail to appoint an arbitrator due to such invalidity and risk the Defendants choosing an arbitrator for Plaintiff and pursuing arbitration unilaterally." Pl.'s Resp. to Mot. to Compel Arbitration at 15. However, the difficulty of the Pointe's position is not a reason to disregard the plain terms of the arbitration clause. And other than its incorrect argument about the service-of-suit amendments, the Pointe offers no other reason why this Court may disregard the arbitration clause. Therefore, the Pointe fails to prove a likelihood of success on the merits.

## IV. CONCLUSION

Accordingly, the Defendants' motion to compel arbitration, (Doc. 10), is **GRANTED**, and this action is **STAYED** and referred to arbitration under 9 U.S.C. § 206. The Clerk is directed to terminate any pending motion and deadline, and to **ADMINISTRATIVELY CLOSE** this case. The Parties must file a status report on **July 28, 2023,** and every 90 days thereafter, and a notice within fourteen days of the conclusion of the arbitration proceedings.

ORDERED in Tampa, Florida on April 27, 2023.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge